**Sherilyn M. YOUNGER, on Behalf of Tia R. and Kia L. YOUNGER, minors, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Defendant– Appellee.**

No. 93–5247.

United States Court of Appeals, Tenth Circuit.

July 7, 1994.

Paul F. McTighe, Jr., Tulsa, OK, for appellant.

Stephen C. Lewis, U.S. Atty., Gayla Fuller, Chief Counsel, Christopher Carillo, Lead Atty., U.S. Dept. of Health and Human Services, Dallas, TX, for appellee.

Before ANDERSON and KELLY, Circuit Judges, and LUNGSTRUM,* District Judge.

LUNGSTRUM, District Judge.

Plaintiff Sherilyn Younger, on behalf of her children, claimants Kia R. and Tia L. Younger, appeals the district court's decision affirming the Secretary's ruling denying her request for children's benefits under the Social Security Act. Claimants' applications were denied both initially and upon reconsid-

---

* Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation.

eration. After a de novo hearing, the administrative law judge (ALJ) also denied their request. The Appeals Council denied review, and claimants filed a complaint in the district court. The district court affirmed the ALJ's decision following its review of the magistrate judge's findings and recommendations and claimants' objections. Appellant's Br. at 2–3. We affirm.[1]

■ The Social Security Act provides insurance benefits to dependent children of a deceased, fully insured, wage earner. 42 U.S.C. § 402(d). *See Rashad v. Sullivan,* 903 F.2d 1229, 1230 (9th Cir.1990). If dependency cannot be presumed under the Act, *see Wolfe v. Sullivan,* 988 F.2d 1025, 1027 (10th Cir.1993), a claimant can show that he or she is the child of a deceased wage earner under other provisions of the Act. *See id.; Cooper ex rel. Cooper v. Sullivan,* 985 F.2d 390, 390 (8th Cir.1993). Here, Ms. Younger alleged that, although she was never married to their father, claimants are the children of Charles L. Costello, a deceased insured wage earner. Appellant's Br. at 4. She contends on appeal that 1) the record evidence tends to support the children's claim to benefits under 42 U.S.C. § 416(h)(2)(A) and the intestacy laws of Oklahoma, and 2) the ALJ failed in his duty to fully develop the record. Appellant's Br. at 10, 13.

■ Our review of the district court's decision is limited to determining whether the record as a whole contains substantial evidence to support the Secretary's decision and whether the Secretary applied the proper legal standards. *See Parker ex rel. Lamon v. Sullivan,* 891 F.2d 185, 187–88 (7th Cir.1989). In child benefit cases, the claimant bears the burden of proving entitlement as the child of a deceased insured wage earner. *See Morris ex rel. Morris v. Bowen,* 646 F.Supp. 363, 364 (W.D.Tex.1986). Where, as here, a claimant appears before

the ALJ pro se, the ALJ has a heightened duty to investigate all issues presented, and to develop the record as to those issues. *See McBride ex rel. McBride v. Heckler,* 619 F.Supp. 1554, 1557 (D.N.J.1985).

## I

■ The statutory provision on which claimants rely, 42 U.S.C. § 416(h)(2)(A), entitles an applicant to child's benefits if the applicant can show entitlement to a share of the wage earner's estate under applicable state law. *See Kinney ex rel. Kinney v. Sullivan,* 746 F.Supp. 1067, 1069 (W.D.Okla. 1990). Review of this claim therefore requires a review of Oklahoma's law of intestate succession, found at Okla.Stat. tit. 84, § 215.

On appeal, claimants rest their claim on § 215(c), which requires that "the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a child born in wedlock." *See Kinney,* 746 F.Supp. at 1070. Claimants do not address the second and third prongs of § 215(c) in any way, but argue simply that the wage earner publicly acknowledged them as his own children. Appellant's Br. at 11. Claimants' evidence consists of affidavit testimony from various persons that the wage earner publicly acknowledged claimants as his own children, and that he took them to his wife's home in Wichita for a two-month period.[2]

Responding to claimants' arguments on appeal, appellee is correct in her assertion that public acknowledgment alone does not satisfy the requirements of § 215(c). Appellee's Br. at 12. The wage earner must have also received the children into his family with the consent of his wife and otherwise treated them as his legitimate children. Therefore, even if claimants are deemed to have shown

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. On appeal, claimants do not argue that the two-month period of time they spent in Wichita

constituted being received into the wage earner's family, *cf. Kinney,* 746 F.Supp. at 1070–71 (discussing reception into the family requirement in setting where wage earner characterized as a "drifter"). Additionally, the wage earner's wife denied knowing that claimants were her husband's children. Rec.Vol. II at 91.

that the wage earner publicly acknowledged them as his own children, we must conclude that substantial evidence supports the ALJ's decision that claimants have not satisfied the requirements of Oklahoma's intestate succession law and, therefore, have not met the requirements of 42 U.S.C. § 416(h)(2)(A).

## II

■ Claimants' second argument is a legal one, requiring a review of the standards applicable to an ALJ's duty to develop the record under the circumstances of this case. It is well established that "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the . . . hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993) (disability case); *see also Ransom v. Bowen,* 844 F.2d 1326, 1330 n. 4 (7th Cir.), *cert. denied,* 488 U.S. 969, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988). That duty is heightened where a claimant is unrepresented. *Henrie,* 13 F.3d at 361. The duty is one of inquiry, to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Id.; see also Coulter v. Weinberger,* 527 F.2d 224, 229 (3d Cir. 1975) ("A social security judge acts as an examiner charged with developing the facts, and is under an affirmative duty to inquire into all the matters at issue." (citations omitted)). We find this standard equally applicable in a child benefit case such as this one.

In the applications for benefits, plaintiff, on behalf of her children, stated her belief that the wage earner listed the children on his tax returns, that he may have listed them on an employment application, and that he took one of the children for emergency hospital treatment in 1981. Rec.Vol. II at 50. The hearing transcript reveals that the ALJ solicited testimony from plaintiff in the following areas: a) the times during which the wage earner lived with plaintiff, b) the times during which the wage earner saw the children, c) the existence of any documentary evidence that the wage earner was the children's father, including birth certificates, Aid For Dependent Children (AFDC) applica-

tions, child support orders, tax returns, and probation reports, d) the wage earner's public acknowledgments that the children were his, including affidavits to that effect, e) his wife's statements that she did not know the children were her husband's until his funeral, f) the lack of any written acknowledgment by the wage earner that the children were his, and g) the wage earner's monetary support of the children. *Id.* at 22–38.

None of the submitted documentation, which included the wage earner's obituary, birth records for the children from the state Vital Statistics division, and hospital birth certificates, provide support for claimants' case. Additionally, before the hearing, the agency followed up on the allegations in their applications for benefits. The agency contacted a case worker who filed AFDC applications for the children. The case worker's files included notes that the wage earner had picked up the children from day care and had once threatened plaintiff that he would get custody of the children. Other than these statements made by plaintiff, however, the files revealed no paternity affidavits or other documents signed by the wage earner. Rec. Vol. II at 61.

The agency contacted the Internal Revenue Service regarding the wage earner's tax records, and was told that the information they wanted (evidence of paternity) was not on the computer system. *Id.* at 68–70. The agency also contacted Diane Stone, with whom the wage earner lived before his death. She said that the wage earner was the children's father, but that she could find no acknowledgment of paternity among his papers. *Id.* at 90. The agency contacted the wage earner's wife, who said he never told her the children were his. *Id.* at 91. Finally, the agency contacted plaintiff herself. She stated that the hospital could find no record of the wage earner's emergency visit in 1981. She said further that she had contacted the wage earner's employer, who could find no mention of the children in his records. She stated that the wage earner had not been ordered to pay child support, and there was no court decree of paternity. *Id.* at 62.

On appeal, claimants list thirteen different areas they claim the ALJ should have asked plaintiff about or inquired further through other sources. Appellant's Br. at 14–16. Our review indicates that these areas 1) were adequately covered by the agency's pre-hearing investigations, 2) were adequately covered by the ALJ at the hearing, 3) were never mentioned by plaintiff during proceedings before the agency, despite repeated opportunities to do so, 4) involve credibility of witnesses, which was not a factor the Secretary relied on in reaching her decision, or 5) are not relevant to the issue before the agency in this case.

■ Our careful study of the record leads us to conclude that the ALJ met his duty to develop the record in this case. The ALJ questioned plaintiff extensively about her relationship with the wage earner and about the possibility of any documentation of paternity. Beyond the duty to develop the record as to issues, factual matters, and avenues raised by a claimant, an ALJ need not make out a claimant's case where, as here, claimants bear the burden of demonstrating entitlement to benefits. Although the result is unfortunate for claimants, the court finds that the judgment of the United States District Court for the Northern District of Oklahoma must be AFFIRMED.